IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ANGELICA HART, ERICA FRAKES,              )
JEFFREY SHARP, SHONNA REED, and W.N.,)
A MINOR CHILD, BY AND THROUGH HER         )
GUARDIAN AD LITEM THERESA McNERNEY,       )
                                          )        6:12-cv-00031-AA
           Plaintiffs,                    )    Civil No.
                                          )
           v.                             )    ORDER
                                          )
BENTON COUNTY (OR) SHERIFF'S              )
OFFICE, et al.,                           )
                                          )
           Defendants.                    )
                                          )
_____   )

AIKEN, Chief Judge:

    Plaintiffs bring this section 1983 proceeding alleging illegal
search and seizure and excessive force.  Plaintiffs also allege a
claim for harassment.  Plaintiffs have filed several motions for
partial summary judgment and defendants seek summary judgment as to

1 - ORDER

all claims.

Gary Lee Goodwin is a convicted sex offender who is under the supervision of the Benton County, Oregon, Parole and Probation Department. Goodwin's probation supervisor, Sarah Ingalls, directed Goodwin not to reside at 732 NW 29th Street, Corvallis, Oregon. Ingalls asserts that numerous convicted felons who have absconded from supervision have been located at this address where plaintiff Jeffrey Sharp resides.

Defendant Benton County Sheriff's Deputy Kevin Mills, while performing a routine check of the inmate roster log on October 11, 2011, discovered that Goodwin had turned himself in to law enforcement on a probation violation warrant. Mills also learned that Goodwin listed his address as the 2300 block NW Walnut Boulevard in Corvallis. However, Mills had personally observed Goodwin come and go from the residence located at 732 NW 29th Street on several occasions. More importantly, the owner of the 732 NW 29th Street residence, Jeffrey sharp, told Mills, on October 7, 2011, that Goodwin has been living at the residence. The residence located at 732 NW 29th Street is a single family residence with no approval for use as a multi-family dwelling. Mills then contacted Ingalls who informed him that Goowdwin registered as homeless.

Defendant Mills prepared an affidavit in support of a warrant to search the residence located at 732 NW 29th Street for evidence of the crime of failure to register as a sex offender. Judge David Connell authorised a warrant, on October 17, 2011, to search the

2 - ORDER

residence for evidence of residency by Goodwin.[1]

Defendant Deputy Mills asserts that because of numerous prior police contacts and investigations at the residence where convicted felons have often gathered and resided, a team of nine Benton County deputies and one Corvallis police officer were involved in the search which took place on October 20, 2011, at about 9:30 p.m.

Defendant Sergeant David Peterson entered first, after defendant Deputy James Hardison knocked on a partially open door, yelled "sheriff's office, search warrant" and received no answer. Hardison saw a young girl, plaintiff W.N., to his right using a computer and pointed his gun in her direction. Hardison then lowered his gun and told W.N. to get down on the ground, but she did not comply. Hardison lowered W.N. to the ground and placed her in handcuffs.

Hardison then entered another portion of the house divided off by a sheet hanging from the ceiling. Hardison saw a man and plaintiff Angelica Hart in the improvised room and pointed his gun and ordered both to the ground. The man and Hart complied.

Hardison next saw plaintiff Jeffrey Sharp through a door barricaded with furniture. Hardison ordered Sharp to get dressed and come out of the room. Sharp complied and Hardison led him to the living room where the other occupants had been gathered.

---

[1]The first warrant authorized search of the residence at 732 NW 29th Street in Corvallis. The warrant described the residence as a single story, with brick siding and a front door facing to the north. The warrant further authorized search for evidence of crime of failure to register as a sex offender including: mail; receipts; and documents related to rental.

Defendant Peterson entered a room in the back of the house where he encountered plaintiff Erica Frakes filing the paint off a bicycle along with another man. Peterson pointed a gun and ordered Frakes and the man to the ground. Frakes complied and Peterson took her by the arm and escorted her to the living room along with the man.

Officers discovered plaintiff Shonna Reed with another man. An officer pointed a gun at Reed briefly before taking her by the arm, awakening her, and pulling her to her feet. The officer handcuffed Reed and led her to the living room.

During execution of the search warrant, officers discovered drug paraphernalia and substances consistent with methamphetamine in addition to evidence of Goodwin's residency. Accordingly, officers obtained a second search warrant, signed by Judge Connell, to search for controlled substances.

Subsequent to the second search, officers arrested plaintiff Shonna Reed for possession of methamphetamine,[2] and Robert Smith for possession of a controlled substance, methamphetamine and theft. Another person, Thomas Carroll, was at the residence and arrested on an outstanding arrest warrant. In addition, two underage females were located at the residence, including plaintiff W.N. Furthermore, Goodwin's belongings were found in a loft above the garage which was locked by Goodwin. The execution of the two search warrants lasted less than three hours.

---

[2]Reed asserted that the drugs belonged to her boyfriend and the District Attorney did not prosecute the charge.

Plaintiffs contend that the search itself was illegal, that defendants used excessive force, and that defendants engaged in harassment.   Plaintiffs contend that defendant Deputy Mills obtained the first search warrant in bad faith and failed to provide particularized information in the affidavit.   Plaintiffs also argue that there was no effort to obtain the evidence sought by other non-invasive means.   In addition, plaintiffs contend that defendants engaged in excessive force in executing the warrant.

To the extent plaintiffs argue that the warrant failed to contain particularized information, that argument fails.   To satisfy the Fourth Amendment, a search warrant must describe with particularity the place to be searched and the items to be seized. United States v. Sayakhom, 186 F.3d 928, 934 (9th Cir. 1999).   The particularity requirement protects a person from an exploratory rummaging in his belongings. United States v. Lacy, 119 F.3d 742, 746 n. 7 (9th Cir. 1997).   Here, the warrant and affidavit in support particularly described the place to be searched and the items to be seized.   The items described in the first warrant include mail, receipts and documents containing rental information demonstrating Goodwin's residence.   The place to be searched was clearly identified as the residence at 732 NW 29th Street in Corvallis.

Plaintiffs further argue that the warrant lacked particularity because it failed to note that multiple people occasionally resided at different parts of the residence, that there was no reason to believe that other people at the residence had possession of

Goodwin's mail or rental agreements, that when Goodwin stays at the residence he stays in the loft above the garage, and that Goodwin was incarcerated at Lincoln County Jail. However, given that the residence was zoned single family, summary judgment as to particularity in favor of plaintiffs is not appropriate. None of the facts raised by plaintiffs demonstrate that the warrant or affidavit failed to describe the place to be searched or items to be seized with particularity. The issue of Goodwin's incarceration from an arrest earlier in October does not conclusively demonstrate that the items sought would not be at the residence. As plaintiffs themselves contend, there was evidence that Goodwin used the residence as his mailing address. Indeed, the warrant satisfied the particularity requirement as a matter of law given that there was a fair probability that items sought via the warrant would be located somewhere within the residence at which defendant Mills reasonably believed Goodwin to have lived. See, e.g., Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific "things" to be searched for and seized are located on the property to which entry is sought.")

Plaintiffs also assert that defendants should have resorted to other non invasive means to obtain the evidence. The establishment of probable cause is not negated simply because a less intrusive means of discovering evidence may exist. Cf. Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 629, n. 9 (1989) (The

reasonableness of any particular government activity does not necessarily or invariably turn on the existence of alternative less intrusive means).

Probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would lead a man of reasonable caution to believe that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. Texas v. Brown, 460 U.S. 730, 742 (1983). A determination of probable cause depends on the totality of the circumstances. Illinois v Gates, 462 U.S. 213, 238 (1983).

A judge's determination of probable cause to issue a search warrant is accorded great deference and is reversed only if that determination is clearly erroneous. United States v. Espinosa, 827 F.2d 604, 610 (9th Cir. 1987). "[T]he traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." Illinois v. Gates, 462 U.S. 213, 236 (1982) (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). "In borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it." United States v. Martinez, 588 F.2d 1227, 1234 (9th Cir. 1987).

A judge is permitted to draw reasonable inferences about where evidence is likely to be kept based on the nature of the evidence

and the type of offense. United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986). He need not determine that the evidence sought is in fact on the premises to be searched or that the evidence is more likely than not to be found where the search takes place. The judge need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit. United States v. Peacock, 761 F.2d 1313, 1315 (9th Cir. 1985). Moreover, "a magistrate may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found." United States v. Fannin, 817 F.2d 1379, 1382 (9th Cir. 1987).

The affidavit revealed that Mills had personally observed Goodwin at the residence, as had other officers, on several occasions. The affidavit further revealed that the owner of the residence, plaintiff Jeffrey Sharp, stated that Goodwin lives there. The affidavit also noted that Sharp lived at the residence and that, therefore, receipts for payment of rent and a rental agreement may be found on the premises in addition to mail addressed to Goodwin. The affidavit provided ample support for Judge Connell's conclusion that probable cause existed to search the residence for evidence of failure to register as a sex offender.

Plaintiffs next assert omissions of facts, such as publicly available information that Goodwin used the residence as his mailing address, that transients often used the address as a mailing address, that Goodwin was a transient who does not pay

rent, and that the evidence sought would be of questionable value, renders the warrant invalid due to Mill's bad faith.

> A section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676-77, 57 L.Ed.2d 667 (1978). See Lippay v. Christos, 996 F.2d 1490, 1502, 1504 (3d Cir.1993). This is true whether the alleged falsehood is an affirmative misrepresentation or a material omission. See, e.g., United States v. Frost, 999 F.2d 737, 742-43 & n. 2 (3d Cir.1993); Stewart v. Donges, 915 F.2d 572, 582 (10th Cir.1990). Under Franks and its progeny, the plaintiff must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause. See Franks, 438 U.S. at 171-72, 98 S.Ct. at 2684-85; Frost, 999 F.2d at 742-43; Velardi v. Walsh, 40 F.3d 569, 573 (2d Cir.1994).

Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997).

Plaintiffs primarily assert that Goodwin merely used the residence in question as a mailing address, that he did not pay rent, that he was in fact a transient and that Mills deliberately omitted this information. The police report cited by plaintiffs, dated nine months prior to the warrant application, indicates that Goodwin himself stated he lived at the residence although he did not pay rent. The allegedly deliberately omitted information in fact strengthens the probable cause to believe that Goodwin resided at the residence. Indeed, plaintiffs themselves state, "it is well known that Goodwin occasionally stays at the home at 732 NW 29th Street." Moreover, the statement by the owner of the property that Goodwin lived at the residence renders the allegedly omitted

information of no consequence in the Judge's determination of probable cause.  Defendants are entitled to summary judgment as to the issue of probable cause to search the residence.

Defendants are similarly entitled to summary judgment on the issue of excessive force.  Plaintiffs assert that they were subjected to excessive force while defendants conducted the search of the 732 NW 29th Street residence.

A search warrant, founded on probable cause, provides limited authority to detain occupants of the premises while the search is conducted.  Michigan v. Summers, 452 U.S. 692, 705 (1981).  However, such detention may run afoul of the Fourth Amendment's prohibition against excessive force under special circumstances or if the detention is prolonged.  Id. at 705, n. 21.

Factors to consider in determining whether defendants engaged in excessive force include: (1) the severity of the crime; (2) whether the persons being detained pose an immediate threat; (3) whether a detainee is actively resisting or attempting to flee; and (4) whether the detention is unnecessarily painful, degrading, or prolonged, or involves an undue invasion of privacy.  Franklin v. Foxworth, 31 F3d 873, 876 (9th Cir. 1994).  As with excessive force cases involving arrests, the determination must also account for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving.  Graham v. Connor, 490 U.S. 386, 396 (1989).

The duration of a detention may be coextensive with the period of a search, and require no further justification.  Dawson v. City

10 - ORDER

of Seattle, 435 F.3d 1054, 1066 (9th Cir. 2006).  In addition, officers may use reasonable force to effectuate detention.  Id. at 1068.  In this case, the defendants entered a residence known to house multiple people and where multiple convicted felons were known to gather.  Indeed, many arrests on felony warrants had been conducted at the residence in the past. Nine officers participated in the search.  Viewing the facts in a light favorable to plaintiffs, reveals the following regarding the detention and use of force during the two searches:

Officers knocked on the already opened front door an shouted "Sheriff's Office!  Search warrant!"  Officers, having received no answer, entered.  Defendant Peterson pointed a gun at a plaintiff W.N., a small sixteen year old female, and ordered her to the ground several times without compliance.[3]  Plaintiff W.N. was placed in handcuffs for a short period that she guesses to be about 45 minutes.  Plaintiff W.N. suffered no injuries.

No guns were pointed at plaintiff Sharp and he was not handcuffed.

An officer briefly pointed a gun at plaintiff Shonna Reed (a resident) and pulled her from bed and placed her in handcuffs for the duration of the search.  Plaintiff Reed was also arrested for possession of methamphetamine.[4]  Plaintiff Reed suffered no pain, but was uncomfortable.

_____

[3]Two other officers may have also pointed their guns at W.N.

[4]As were two other residents who were convicted felons wanted on outstanding warrants.

11 - ORDER

Defendant Hardison briefly pointed a gun at plaintiff Angelica Hart (then a minor) and ordered her to the ground.

Defendant Peterson pointed a gun at plaintiff Frakes and ordered her to the ground. Defendant Peterson then took her by the arm and escorted her to the living room.

After the occupants of the house were gathered in the living room, all non-residents were permitted to leave. Plaintiffs W.N., Hart, and Frakes left at that time.

The use of force in this case was minimal and designed to maintain safety and control of the situation involving several people in a multiple places throughout the residence to be searched. The length of detention was reasonable given the discovery of methamphetamine and the necessity to obtain a second warrant. While plaintiff Reed was placed in handcuffs for the duration, she was a resident and in fact arrested for drug possession. The drawing of guns was not unreasonable given the number of people at the residence and previous encounters there. The authority to detain incident to a search is categorical and the minimal amount of force used here to effectuate that search did not violate the Fourth Amendment. See Dawson, 435 F.3d at 1067-68 (detention in handcuffs for the length of the search is permitted and the drawing of guns is permissible where there is a concern for safety). Accordingly, defendants are entitled to summary judgment on the issue of excessive force.

Plaintiffs also assert a claim for harassment without stating the legal basis for the claim. Plaintiffs contend that Benton

12 - ORDER

County Sheriff's Deputies and Corvallis police officers make it a habit to go to 732 NW 29th Street looking for someone to arrest without probable cause. However, plaintiffs fail to provide any admissible factual support for claims of unconstitutional searches or arrests at the residence beyond their conclusory assertions. To the extent plaintiff's seek a declaration of unconstitutionality or an injunction prohibiting future unconstitutional searches, they fail to demonstrate any past or ongoing violations. Accordingly, defendants are entitled to summary judgment as to plaintiffs' harassment claim.

After briefing the summary judgment motions, pro bono counsel for plaintiff Theresa McNerney, as guardian litem for plaintiff W.N., filed a motion to withdraw. That motion is granted.

<u>CONCLUSION</u>

For the reasons stated above, Christopher McCracken's motion to withdraw (#105) is granted. In addition, plaintiffs' motions for summary judgment (#s 55, 70, and 72) are denied and defendants' motion for summary judgment (#82) is granted. This action is dismissed.

DATED this _____ day of January, 2013.

_____
Ann Aiken
United States District Judge

13 - ORDER